IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


INTEGRA TELECOM, INC., an                Civ. No. 08-906-AA
Oregon corporation, and INTEGRA          OPINION AND ORDER
TELECOM OF WASHINGTON, INC., an
Oregon corporation,

        Plaintiffs,

   v.

TWIN CITY FIRE INSURANCE COMPANY,
an Indiana corporation,

        Defendant.
_____

Stephen M. Feldman
Lawrence H. Reichman
Perkins Coie LLP
1120 NW Couch Street, Tenth Floor
Portland, OR 97209-4128
        Attorneys for plaintiffs

Ronald J. Clark
Marianne M. Chim

1 - OPINION AND ORDER

Bullivant Houser Bailey PC
300 Pioneer Tower
888 SW Fifth Avenue
Portland, OR 97204-2089
        Attorneys for defendant

AIKEN, Chief Judge:

   Plaintiffs Integra Telecom, Inc. and Integra Telecom of
Washington, Inc. (Integra) brought suit seeking a declaration
that Defendant Twin City Fire Insurance Company (Twin City)
defend and indemnify Integra in a class action lawsuit brought
against Integra while covered under a Twin City insurance policy
(Policy).  Defendant moves for summary judgment against
plaintiffs, arguing that the Policy excludes coverage for the
claims brought against plaintiffs in the underlying lawsuit.
Plaintiffs move for cross summary judgment claiming the Policy
provides insurance for the underlying lawsuit and the exclusions
asserted by defendant do not apply.  Defendant also moves to
strike certain declarations presented by plaintiffs.  The court
heard telephone oral argument on April 15, 2010.  Plaintiffs'
motion is granted and defendant's motions are denied.

**BACKGROUND**

   The relevant facts are not in dispute and are taken from
both parties' concise statements of material facts.  Integra is a
company that provides telecommunications services.  In 2004,
Integra purchased the Policy, officially titled "Private Choice
Encore! Policy" and issued Policy No. 00 KB 022305-04, from Twin

2 - OPINION AND ORDER

City.  The Policy coverage period was from December 15, 2004
through December 15, 2005.  The Policy provided that Twin City
would pay loss on behalf of Integra, if Integra was sued by a
third party for a wrongful act during the policy period.
Specifically, the policy stated ". . . the Insurer shall pay Loss
on behalf of an Insured Entity resulting from an Entity Claim
first made against such Insured Entity during the Policy Period .
. . for a Wrongful Act by the Insured Entity." Declaration of
Ronald J. Clark (Clark Declaration), Ex. 4, at 2.

In August 2005, Indoor Billboard/Washington (Indoor
Billboard) filed a class action lawsuit against Integra
(underlying lawsuit) in Washington state court.  The class
consisted of Integra customers who alleged that Integra charged
and collected surcharge fees that were falsely denominated on
customer bill statements.  The complaint alleged "unfair and
deceptive business practices" and a violation of Washington's
Consumer Protection Act (CPA).  Clark Declaration, Ex. 2, at 1.

In September 2005, Integra tendered the underlying lawsuit
to Twin City seeking defense under the Policy.  On October 21,
2005, Twin City sent a letter to Integra denying its request for
coverage based on an exclusion found in Section V.(A)(6)
(Exclusion A) of the Policy that states in relevant part:
        The Insurer shall not pay Loss under Insuring Agreement
        (C) for any Claim:
        (6) based upon, arising from, or in any way related to price
        fixing, restraint to trade, monopolization, **unfair trade
        practices** or any violation of the Federal Trade Commission

> Act, Sherman Anti-Trust Act, Clayton Act, or any similar law
> regulating anti-trust, monopoly, price fixing, price
> discrimination, predatory pricing or restraint of trade
> activities.

Declaration of Lawrence H. Reichman (Reichman Declaration), Ex.

1, at 3(emphasis added).

Twin City explained that because Indoor Billboard's complaint

alleged Integra engaged in "unfair and deceptive business

practices," Exclusion A applied.  In the same letter, Twin City

reserved the right to deny coverage based on exclusions listed in

Section IV. (K) and (L) (Exclusion K, Exclusion L) which state:

> The Insurer shall not pay Loss for any Claim:
>     (K)based upon, arising from, or in any way related to the
>     gaining, in fact, or any personal profit, remuneration or
>     advantage to which a judgment or other final adjudication
>     establishes the Insureds are not legally entitled; or
>
>     (L)based upon, arising from, or in any way related to any
>     deliberately fraudulent or criminal act or omission or any
>     willful violation of law by the Insureds if a judgment or
>     other final adjudication establishes such an act, omission
>     or violation.

Reichman Declaration, Ex. 1, at 4.

Integra therefore financed its own defense in the underlying

lawsuit.

   At trial, Integra won a motion for summary judgment on the

grounds that Indoor Billboard did not establish that Integra

committed an "unfair or deceptive act," which is a requirement

for a CPA violation claim.  On appeal, the Washington Supreme

Court reversed the trial court's grant of summary judgment.  In

that opinion, cited as Indoor Billboard/Washington, Inc. v.

4 - OPINION AND ORDER

Integra Telecom of Washington, Inc., 162 Wn. 2d 59, 170 P.3d 10
(2007), the court held that, as a matter of law, Indoor Billboard
established that Integra engaged in an unfair or deceptive act or
practice.  The court remanded for the trial court to rule on a
remaining issue of material fact regarding the causal link
between Integra's unfair or deceptive acts or practices and
Indoor Billboard's alleged damages.  The case eventually settled
in March 2009.

The present lawsuit ensued on July 20, 2008 when Integra
filed a declaratory judgment action against Twin City in this
court.  In its complaint, Integra alleged that Twin City was
obligated to defend Integra in the underlying lawsuit, was
required to indemnify Integra for any liability resulting from
the underlying lawsuit, and pay damages arising out of Twin
City's initial denial of coverage.  Both parties have moved for
summary judgment on the issue of whether the Policy covers
Integra in the underlying lawsuit.

### STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party
is entitled to a judgment as a matter of law." Fed. R. Civ. P.
56(C)).  The materiality of a fact is determined by the

substantive law on the issue.  T.W. Elec. Serv., Inc. v. Pac.
Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

    The moving party has the burden of establishing the absence
of a genuine issue of material fact.  Celotex Corp. v. Catrett,
477 U.S. 317, 323 (1986).  If the moving party shows the absence
of a genuine issue of material fact, the nonmoving party must go
beyond the pleadings and identify facts which show a genuine
issue for trial.  Id. at 324.

    Special rules of construction apply to evaluating summary
judgment motions: (1) all reasonable doubts as to the existence
of genuine issues of material fact should be resolved against the
moving party; and (2) all inferences to be drawn from the
underlying facts must be viewed in the light most favorable to
the nonmoving party.  T.W. Elec., 809 F.2d at 630.

### DISCUSSION

    Defendant filed a motion for summary judgment arguing that
Exclusion A bars coverage under the Policy for the underlying
lawsuit because it lists "unfair trade practices" as one of the
claims against the Insured that the Policy does not cover.
Defendant argues Exclusion A explicitly denies coverage in this
case because the underlying lawsuit complaint alleged plaintiffs
engaged in unfair and deceptive business practices and the
Washington Supreme Court also found that plaintiffs had engaged
in unfair and deceptive business practices as a matter of law.

6 - OPINION AND ORDER

Defendant also argues that Exclusions K and L apply because plaintiffs were not legally entitled to profits made from customer payments of mislabled fees and because plaintiffs willfully violated the law.

Plaintiffs filed a cross motion for summary judgment arguing that Exclusion A does not apply because plaintiffs interpreted "unfair trade practices" as limited to anti-trust violations or other unfair practices in restraint of trade.  Plaintiffs also argue that Exclusions K and L do not apply because the underlying lawsuit settled and no court made a "final decision" in the lawsuit.

## I.  Insurance Policy Interpretation Rules

Interpretation of the terms of an insurance policy is a question of law.  Under Oregon law, construction of an insurance policy begins with a determination of the parties' intent. Totten v. New York Life Ins. Co., 298 Or. 765, 770, 696 P.2d 1082 (1985).  The intent of the parties must be ascertained based on the terms and conditions of the insurance policy.  Hoffman Construction Co. of Alaska v. Fred S. James & Co., of Ore., 313 Or. 464, 469, 836 P.2d 703 (1992).  The policy must be viewed within its "four corners" and all terms in the contract must be considered as they relate to the document as a whole.  No. Pacific Ins. Co. v. Hamilton, 332 Or. 20, 24, 22 P.3d 739 (2001). All parts and clauses of the contract "must be construed to

determine if and how far one clause is modified, limited or controlled by others." Id. (quoting Denton v. International Health & Life, 270 Or. 44, 449-50, 528 P.2d 546 (1974)).

In an insurance policy dispute, the court must determine if the disputed term or clause is ambiguous. A term or clause is not deemed ambiguous merely because it is capable of more than one meaning. Id. Instead, there is ambiguity if two or more *plausible* interpretations exist after the court scrutinizes the term in light of the context in which it is used and the broader policy as a whole. Hoffman, 313 Or. at 706. In scrutinizing the term, the court should first determine if it has plain meaning. Id. The court will determine plain meaning from the perspective of a reasonable insured. Id. If there is no plain meaning, and the term could be interpreted in two or more ways, the term is ambiguous and must be construed in favor of the insured. Id.

**A. "Unfair Trade Practices" in Exclusion A**

The parties dispute the meaning of the term "unfair trade practices" as found in Exclusion A in the Policy. Defendant argues that the term should be broadly construed to include any and all unfair trade practices. Defendant argues that "unfair trade practices" includes Indoor Billboard's claim against plaintiffs for "unfair and deceptive business practices." Accordingly, they urge that Exclusion A applies in this case and they have no liability to defend or indemnify plaintiffs in the

underlying lawsuit.

Conversely, plaintiffs argue that the meaning of "unfair trade practices" in the context of Exclusion A should be limited to antitrust or anti-competitive unfair trade practices. Plaintiffs rely on the principle of *noscitur a sociis,* a canon of statutory and contract construction that instructs "the meaning of an unclear word or phrase should be determined by the words immediately surrounding it." Blacks Law Dictionary, at 1087 (8th ed. 2004). Indoor Billboard's claim against plaintiffs in the underlying lawsuit did not involve an antitrust or anti-competitive violation claim. Plaintiffs therefore argue Exclusion A does not apply. Further, plaintiffs argue that "unfair trade practices" in this context is ambiguous and that plaintiffs' interpretation is at least reasonable. Therefore, plaintiffs argue that Oregon law directs that the meaning of "unfair trade practices" be construed in its favor.

I agree with plaintiffs that, in the context of the Policy, the term "unfair trade practices" is ambiguous and that plaintiffs' interpretation is reasonable. Defendant makes several arguments asserting that "unfair trade practices" in the context of the Policy could only reasonably be interpreted broadly to include the type of claim made against plaintiffs by Indoor Billboard. While defendant's arguments in favor of its interpretation of the term are reasonable, plaintiffs'

9 - OPINION AND ORDER

interpretation is also reasonable.  Therefore, under Oregon law,
"unfair trade practices" must be construed in favor of plaintiffs
and Exclusion A should not apply in this case.

First, defendant argues that plaintiffs' reliance on
*noscitur a sociis* to interpret "unfair trade practices" as taking
on the meaning of its surrounding antitrust terms is
unreasonable.  Defendant relies on White v. Jubitz, 219 Or. App.
62, 182 P.3d 215 (2008), where the court rejected an application
of *noscitur a sociis* to a statutory term.  In Jubitz, the court
was asked to determine if, under Oregon statute, the plaintiff's
Medicare write-off benefits were a carved-out benefit.  Id. at
71.  The statute carved-out "(d) Retirement, disability and
pension plan benefits, and federal Social Security benefits."
Id.  The issue was whether "federal Social Security benefits" was
modified by the other retirement related terms, or if it could be
read broadly to include Medicare benefits.  Id. at 74-76.  The
court held that because "federal Social Security benefits" was
separated grammatically from the other terms, it was not
ambiguous, could not be modified by the other terms, and should
be read broadly to include Medicare benefits.  Id. at 76.  The
court held that any other reading would render the disputed term
meaningless.  Id.

Defendant argues that Jubitz is analogous to the present
case.  However, Jubitz can be distinguished in several ways.

First, Jubitz involved statutory interpretation, not insurance policy interpretation, so the case is not directly on point. See Smith v. State Farm Ins., 144 Or. App. 442, 448, 927 P.2d 111 (1996).  Second, Jubitz held that the disputed term would be rendered meaningless if it was limited to the other retirement related terms.  Here, the term "unfair trade practices" would not be rendered meaningless if it was limited to antitrust or anti-competitive trade practices.  The only specific terms listed in Exclusion A are price fixing, restraint to trade, and monopolization, so "unfair trade practices" could include all other antitrust or anti-competitive acts.  Finally, in Jubitz, the disputed term was clearly separated grammatically from the other terms, whereas I do not find any separation of the term "unfair trade practices" from the other terms.

        The case of Beyer v. Herigate Realty, Inc., 251 F.3d 1155 (7th Cir. 2001), is persuasive and analogous to the present case. In Beyer, the court held that the term "deceptive trade practice" in an insurance policy was limited by the terms surrounding it to mean antitrust or restraint of trade deceptive trade practices. Id. at 1157.  The court explained that the word "trade" in this context related to the insured's relationship with its business rivals, rather than its customers.  Id.  Since the Seventh Circuit reasonably read "deceptive trade practices" to be limited by the antitrust words and phrases surrounding it in that case,

11 - OPINION AND ORDER

an insured could reasonably read "unfair trade practices" in Exclusion A the same way.

In its reply brief, defendant additionally argues that the application of *noscitur a sociis* should not limit "unfair trade practices" to antitrust or anti-competitive practices because not all the surrounding terms are exclusively antitrust or anti-competitive terms. Specifically defendant argues that "any violation of the Federal Trade Commission Act . . . or any similar law" is not limited to antitrust or anti-competitive violations. Defendant asserts that there are at least seventeen laws that are similar to the Federal Trade Commission Act called "Little FTC Acts." Violations of the Little FTC Acts may include deceptive business practices like a violation of the Washington CPA, which is the claim made against plaintiffs by Indoor Billboard.

While defendant's characterization of Little FTC Acts may be legally accurate, a reasonable insured would not read Exclusion A to include violations of the Little FTC Acts or other general consumer protections acts. First "any similar law" modifies not only the Federal Trade Commission Act, but the Sherman Anti-Trust Act and the Clayton Act. Second, and most important, "any similar law" is followed by "regulating anti-trust, monopoly, price fixing, price discrimination, predatory pricing or restraint of trade activities." It would be reasonable for an

12 - OPINION AND ORDER

insured to interpret this part of Exclusion A to be limited to antitrust or anti-competitive violations. Accordingly, applying the canon of *noscitur a sociis,* it is reasonable for an insured to interpret "unfair trade practices" as limited to antitrust and anti-competitive violations because the terms that come before and after it are reasonably limited to antitrust or anti-competitive conduct.

The arguments presented by both sides regarding the proper grammatical reading of "unfair trade practices" in relation to the clause "or any similar law regulating anti-trust . . ." are not relevant because the arguments do not impact the outcome of a *noscitur a sociis* analysis. Applying *noscitur a sociis*, the term "unfair trade practices" could reasonably be read as limited by the surrounding antitrust or anti-competitive terms regardless of whether it is technically modified by the final clause in the Exclusion. Accordingly defendant's motion to strike the Declaration of Susan Conrad is denied as moot.

Further, I find no need to consider the extrinsic evidence provided by plaintiffs that relate to the advertising of the Policy and Exclusion A.[1]  A reasonable insured could interpret "unfair trade practices" to be limited by the surrounding

_____

[1]Extrinsic evidence in this case could be considered since I find the term "unfair trade practices" to be ambiguous. <u>Yogman v. Parrot</u>, 325 Or. 385, 363-64, 937 P.2d 1019 (1997) (extrinsic evidence is admissible to explain an ambiguity in the text relevant to the parties' intent)  However, it is unnecessary.

antitrust and anti-competitive terms within the four corners of
the document.   Therefore, defendant's motion to strike parts of
the Declaration of Stephen Feldman and the Declaration of Jeff
Langfeldt are denied as moot.

In sum, Exclusion A does not exclude coverage under the
Policy for plaintiffs in the underlying lawsuit.   While
defendant's argument that "unfair trade practices" should be read
broadly to include the claims against plaintiffs in the
underlying lawsuit is reasonable, plaintiffs' interpretation is
also reasonable.   After scrutinizing the term in the context of
its surrounding terms and in the context of the Policy as a
whole, I conclude the term is ambiguous and that plaintiffs'
interpretation is reasonable.   Therefore, under Oregon law the
term will be construed in favor of the insured plaintiffs.

**B.   Exclusions K and L**

Defendant argues that even if Exclusion A does not apply,
plaintiffs are barred from coverage under the Policy by
Exclusions K and L.   Exclusion K bars coverage when a judgment or
other final adjudication establishes the insured is not legally
entitled to certain profits or remunerations.   Exclusion L bars
coverage when a judgment or other final adjudication establishes
the insured willfully violated the law or deliberately committed
a fraudulent or criminal act.

Exclusions K and L do not bar Policy coverage for the

14 - OPINION AND ORDER

plaintiffs in this case because there is no judgment or final adjudication stating that plaintiffs were not legally entitled to profits or that plaintiffs willfully violated the law or deliberately committed a fraudulent or criminal act.  The Washington Supreme Court in <u>Indoor Billboard/Washington, Inc.</u> reversed the grant of Integra's summary judgment motion and held that Indoor Billboard established in their complaint that Integra engaged in an "unfair and deceptive act" which was required for a Washington CPA violation claim.  The court did not finally adjudicate whether Integra was legally entitled to certain profits or that Integra acted willfully or criminally. Therefore, Exclusions K and L cannot bar coverage for plaintiffs in the underlying lawsuit.

## C. Duty to Defend

Finally, even if defendant's interpretations of Exclusion A or Exclusion K and L were the only reasonable interpretations and precluded defendant's duty to indemnify plaintiffs under the Policy, defendant would still owe plaintiffs a duty to defend. Under Oregon law, an insurer has a duty to defend and insured  if the complaint in an underlying lawsuit has any basis for which the insurer provides coverage.  <u>Nielsen v. St. Paul Co.</u>, 283 Or. 277, 280, 583 P.2d 545 (1978).  A court should look to the facts alleged in the complaint to determine if they provide a basis for recovery under the policy. <u>Ledford v. Gutoski</u>, 319 Or. 397, 400,

877 P.2d 80 (1994).  If there is any ambiguity in the complaint
as to whether the allegations could be covered under the policy,
it should be resolved in favor of the insured.  Id.

Plaintiffs argue that the complaint contains several
allegations of actions by Integra that would support claims
beyond the pled CPA violation claim, including negligent
misrepresentation and violation of federal telecommunications
law.  Such claims are covered under the Policy, which generally
covers "wrongful acts" of the insured.  Wrongful act is defined
in the Policy as "an actual or alleged error, misstatement,
misleading statement, act, omission, neglect or breach of duty. .
."  Plaintiffs argue that the allegations in the complaint that
Integra falsely denominated certain fees on customer billing
statements can be characterized as a misstatement or misleading
act which in turn could support a claim for negligent
misrepresentation.  Similarly, plaintiffs argue that the
complaint supports a claim for violation of federal
telecommunication laws since falsely denominating fees is a
violation of the Federal Communication Commission regulations.
Therefore, since duty to defend is to be determined by the
allegations of the complaint, plaintiffs contend defendant had a
duty to defend plaintiffs in the underlying lawsuit.

Defendant argues that the complaint does not support claims
for negligent misrepresentation or violations of federal

telecommunications law.  Defendant argues that plaintiffs cannot
show that the allegations in the complaint could make out a claim
for negligent misrepresentation because the allegations do not
claim plaintiffs mislabeled fees "for the guidance of others in
their business transactions," which is the definition of
negligent misrepresentation according to a recent Washington
Court of Appeals decision.  Defendant also argues that the
complaint does not support a claim for a violation of federal
telecommunications law because the words "unjust" or
"unreasonable" do not appear in the complaint and because such a
claim could only be brought in federal court.

    I agree with plaintiffs that, under Oregon's broad duty to
defend law, the complaint in the underlying lawsuit contains
factual allegations that would support claims for negligent
misrepresentation and violation of federal telecommunications
law.  Oregon law is clear that duty to defend should be
determined by the facts alleged in a complaint and not the actual
claims, the specific labels attached to the allegations or
claims, or the forums in which those claims are brought.  Id.; L
& D of Ore., Inc. v. American States Ins. Co., 171 Or. App. 17,
20, 14 P.3d 617 (2000).  Since the facts alleged in the
underlying complaint do support claims for both negligent
misrepresentation and violation of federal telecommunications
law, and those claims are covered under the Policy, defendant

17 - OPINION AND ORDER

owes a duty to defend regardless of the interpretation of Exclusion A or Exclusions K and L.

### CONCLUSION

For the above stated reasons, defendant's motions for summary judgment (doc. 17) and to strike (doc. 43) are denied. Plaintiffs' cross motion for summary judgment (doc. 26) is granted.

IT IS SO ORDERED.

Dated this  27   day of April 2010.


          /s/ Ann Aiken                  
                    Ann Aiken
            United States District Judge


18 - OPINION AND ORDER